REQUESTED BY: Senator Tom Vickers Nebraska State Legislature State Capitol Lincoln, NE 68509
Dear Senator Vickers:
This is in reply to several questions you have asked which pertain to The Report of the Governor's ChristianSchool Issue Panel, January 26, 1984, and LB 928 of the Eighty-Eighth Legislature, Second Session (1984).
I. If, under The Report of the Governor's Christian SchoolIssue Panel, the student testing model is used and there are ten students in a school who, as a whole, test below comparable state (or national averages), will the free exercise of religion rights of those parents whose children have scored above the applicable norm be lost because of an event beyond their control (the below average testing of the remainder of the children at such school)? If so, are there any less restrictive testing enforcement procedures which would meet the state's interest?
If we understand the first part of this question correctly, you ask if the Legislature were to pass legislation pertaining to church-related private schools and provided therein student testing as an alternative to curriculum, teacher certification and related item requirements, could that legislation also mandate that in the event a stated percentage of students who attend such a school fail to pass such a test the church-related private school shall be dissolved or otherwise cease all operations? Yes, in our opinion, the legislation could so mandate. Implicit in our response is the assumption that the test and the percentage of students who must pass the test are constitutional.
In the second part of this question you ask if there are any less restrictive testing enforcement procedures which would meet the state's interest. Yes. The current Nebraska laws and regulations which merely require nonpublic schools to teach certain basic subjects for a specified minimum number of days using certified teachers who select the tests to be given the students appears to be considerably less restrictive.
II. If, under The Report of the Governor's Christian SchoolPanel, there is an only student in a home school and such student happens to have certain learning disabilities which prevent the student from achieving at the state (or national) average, then are the parents of such student, ipso facto, prevented in exercising their religious freedom rights in the education of their child?
We can not answer this question. In order to do so we would need to know the definition of the term `learning disabilities' and whether children with such disabilities would be exempt from the compulsory attendance law. We would also need to know whether the legislation pertaining thereto mandates that children with learning disabilities must achieve at least within the same range on the same test as nonhandicapped children. Finally, we would need to know the link, if any, between the religious beliefs of the child's parents and the home school.
III. Nebraska does not recognize one standardized achievement test but does use a criterion referenced basic learning skills tests known as N-ABEL's for purposes of accreditation of schools. Apparently, The Report of the Governor'sChristian School Panel refers to a state or nationally standardized test. Since no state norms will exist for comparison purposes, does the fact that national norms may be used raise any Constitutional questions of equal protection?
The fact that national norms may be used does not necessarily raise constitutional questions of equal protection. However, whether a national norm would be satisfactory in a constitutional sense would depend on analysis of a number of factors, including the educational policies of the other forty-nine states. For example, if in some States children may enter school before reaching the age of five, the reading and vocabulary norms for nine-year olds may be relatively high, because these children may have had more schooling than nine-year olds in other States who could not enter school under the age of six. Hence if most states permitted children to enter school before reaching the age of five, the national norm in certain tests could be high in comparison with states where children could not enter school under the age of five. Finally, any norm, including a national norm, could be based on grossly unequal and artificial units of measurement. That, of course, could only be determined factually.
IV. As to LB 928's teacher testing provisions, does the fact that teacher testing is not used universally present any Constitutional questions? LB 928 also requires, in section 11, testing of all prospective teachers in their subject matter areas, prior to certification. Does this requirement diminish the argument that teacher testing, as an alternative to certification of teachers employed in church-related private schools is discriminatory?
Teacher testing per se, in our opinion, does not present a constitutional question. Consequently, it is unnecessary to answer the second part of this question.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Harold Mosher Assistant Attorney General